**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff–Appellee.**

v.

**J.M. HUBER CORPORATION, Defendant–Appellant.**

No. 90–2046.

United States Court of Appeals, Fifth Circuit.

April 9, 1991.

Anthony J. Sadberry, Sullivan, King &
Sabom, Houston, Tex., for defendant-appel-
lant.

Lamont N. White, Washington, D.C., Jerome N. Scanlan, Regional Atty., E.E.O.C., Houston, Tex., for plaintiff-appellee.

Before GARWOOD and WIENER, Circuit Judges, and VELA,[1] District Judge.

WIENER, Circuit Judge:

After defendant-appellant, J.M. Huber Corporation (Huber), denied a promotion to Brenda Adams and fired her about a month later, Adams filed a joint charge of discrimination with the Texas Commission on Human Rights and with the Equal Employment Opportunity Commission (EEOC), plaintiff-appellee, alleging racial discrimination in violation of § 703 of Title VII, 42 U.S.C. § 2000e–2. After Adams filed her Title VII charge against Huber with the EEOC, Huber informed Adams that she could not receive funds that Huber had paid on her behalf into a qualified employee benefit plan until her Title VII charge was resolved. Thereafter, the EEOC, on behalf of Adams, filed suit against Huber alleging that the withholding of benefit plan funds constituted retaliation, in violation of § 704 of Title VII, 42 U.S.C. § 2000e–3(a), for Adams' having filed the previous Title VII charge. Huber appeals from the district court's partial summary judgment on liability for the EEOC, based on that court's finding that Huber's withholding of Adams' benefit plan funds was a per se violation of Title VII. Huber also appeals from the district court's final judgment which awarded Adams $10,350 in damages, plus prejudgment and postjudgment interest, enjoined Huber from withholding benefit plan funds from employees who challenge the termination of their employment, and required Huber to inform employees terminated in the future that the company will not withhold benefits if they file a charge with the EEOC. Finding that the district court erred in granting summary judgment, we vacate the injunction, reverse the judgment in favor of the EEOC, and remand.

I.

BACKGROUND

Huber hired Adams in 1982. On December 11, 1985, she was denied a promotion to senior oil revenue clerk, and on December 13, 1985, she was terminated from her position of accounts receivable clerk. On December 18, 1985, Adams filed a joint charge of discrimination with the Texas Commission on Human Rights and with the EEOC which charge alleged, inter alia, that she was denied the promotion and subsequently fired because she was black, in violation of § 703 of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e–2.[2]

As an employee of Huber, Adams received, in addition to her salary, certain employee benefits, including participation in a retirement plan and a profit sharing plan (referred to collectively as the "benefit plan"). Under the benefit plan, an employee whose employment with Huber is severed for any reason is entitled to payment of the benefit plan funds. After Huber fired Adams, she completed the appropriate forms to request the payment of funds due her under the benefit plan, which as of December 31, 1985, amounted to $10,350. Huber's manager of personnel notified Adams on February 4, 1986, that, in accordance with Huber company policy, she could not receive the funds until her Title VII charge was resolved. According to Huber, it withholds benefit plan funds from former employees who challenge termination for any reason because, if the terminated employee were later ordered reinstated, the premature benefit payment could jeopardize the benefit plan's qualified tax status.

---

1. District Judge of the Southern District of Texas, sitting by designation.

2. On September 20, 1989, the EEOC issued a determination that there was no reasonable cause to believe that Adams' charge of racial discrimination was true. Adams did not exercise her right to challenge this determination by requesting an administrative review with the EEOC or filing suit in federal court.

On February 6, 1986, Adams filed another charge with the EEOC, this time alleging that Huber's withholding of her funds was unlawful retaliation for her having filed the previous Title VII charge, in violation of § 704(a) of Title VII, 42 U.S.C. § 2000e–3(a).[3]

## II.

## DISTRICT COURT PROCEEDINGS

On June 19, 1987, the EEOC filed suit against Huber in federal district court, seeking payment of the benefit plan funds due Adams, with prejudgment interest, and an injunction against similar conduct in the future. After limited discovery and the denial of Huber's motion to dismiss, the EEOC filed a motion for partial summary judgment on the issue of liability, and Huber filed a crossmotion for summary judgment. The district court entered partial summary judgment in favor of the EEOC on September 15, 1988. Then, on September 7, 1989, the court entered its final judgment awarding to Adams the $10,350 being held in the benefit plan, together with prejudgment interest running from January 1, 1986 at 8% per annum and postjudgment interest at 8.27% per annum. The district court also entered a companywide permanent injunction prohibiting Huber from withholding benefit plan funds from former employees who file EEOC charges and requiring employees of Huber's personnel office to inform "employees who are terminated"[4] that benefits will not be withheld if they file a charge with the EEOC.

In its opposition to the EEOC's motion for partial summary judgment and in its crossmotion for summary judgment, Huber presented summary judgment evidence that included the deposition testimony and affidavit of Jan Blackwell, Huber's Vice President for Personnel, to support its argument that it had a legitimate, nonretaliatory motive for withholding the plan benefits from Adams. Although the EEOC did not present any summary judgment evidence to controvert that defense, the district court rejected the defense. The district court also rejected Huber's argument that the EEOC was equitably estopped from bringing this case by a 1979 EEOC finding of "no reasonable cause" in a similar case involving another Huber employee.

Because the legality of Adams' dismissal has been settled in favor of the employer, thereby eliminating the possibility of reinstatement, Huber has voluntarily paid Adams the $10,350 principal balance of her account in the benefit plan. Additionally, pending the outcome of this appeal, Huber has deposited funds in the registry of the court in the amount of the district court's award of prejudgment interest.

## III.

## DISCUSSION

### A. Standard of Review

This court reviews the grant of summary judgment motion de novo, using the same criteria used by the district court in the first instance.[5] We "review the evidence and inferences to be drawn therefrom in the light most favorable to the non-moving

---

**3.** Section 704(a) of Title VII as amended, 42 U.S.C. § 2000e–3(a), provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investiga-

tion, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a) (1982).

**4.** The district court's final judgment refers to "employees who are terminated." Huber asserts that the notification requirement applies "even to employees who voluntarily resign." The EEOC states that the notification requirement covers "departing employees" and does not challenge Huber's characterization.

**5.** See *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir.1988).

party."[6] Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[7] A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8] "Material facts" are "facts that might affect the outcome of the suit under the governing law."[9]

## B. Title VII Violation

■ Huber argues that the district court erred in granting partial summary judgment on liability and that the district court should have applied the *McDonnell/Burdine* standard set forth in *McDonnell Douglas Corp. v. Green*,[10] and clarified in *Texas Department of Community Affairs v. Burdine*.[11] We agree that the district court did not apply the proper legal standard, and that it erroneously held that Huber committed a per se violation of the antiretaliation provision in Title VII by withholding Adams' benefit plan funds.

Huber contends that both the district court and the EEOC erred in treating this case as a per se violation of the antiretaliation provision of Title VII. Huber further contends that this case should have been analyzed under the *McDonnell/Burdine* standard as applied to retaliation cases. The *McDonnell/Burdine* standard ordinarily governs the order and allocation of proof in actions for unlawful retaliation under section 704(a) of Title VII. *See McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir.1983) (citing *De Anda v. St. Joseph Hosp.*, 671 F.2d 850, 856 (5th Cir.1982)). As this court explained in *McMillan:*

> Applying these standards to a retaliation case, the plaintiff must first establish a prima facie case of retaliation by showing (1) that she is engaged in an activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision. Once the prima facie case is established, the burden of producing some nondiscriminatory reason falls upon the defendant. The employee then assumes the burden of showing that the reasons given were a pretext for retaliation.

*McMillan*, 710 F.2d at 1116 (citation omitted).

The EEOC argues that the *McDonnell/Burdine* standard does not apply to this case because Huber acknowledged that it denied the benefit in question *simply because* the former employee filed a Title VII charge. The EEOC relies in particular on *EEOC v. Cosmair, Inc., L'Oreal Hair Care Division*.[12] In *Cosmair*, this court held that an employer had committed unlawful retaliation by stopping severance pay after the former employee filed a charge with the EEOC.[13] Contending that the district court correctly found that Huber committed a per se violation of the antiretaliation provision in Title VII, the EEOC relies on the following language from *Cosmair:* "Clearly if Cosmair stopped providing [the employee] benefits to which he was otherwise entitled *simply because* he filed a charge, the company

---

**6.** *Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir.1986) (per curiam) (citing *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 873 (5th Cir.1984)).

**7.** Fed.R.Civ.P. 56(c).

**8.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

**9.** *Id.*

**10.** 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973).

**11.** 450 U.S. 248, 101 S.Ct. 1089, 1094–96, 67 L.Ed.2d 207 (1981).

**12.** 821 F.2d 1085 (5th Cir.1987).

**13.** *Id.* at 1089. *Cosmair* arose under the nearly identical prohibition on retaliation contained in § 4(d) of the Age Discrimination in Employment Act, 29 U.S.C. § 623(d).

would be guilty of retaliation." [14] We do not read *Cosmair*, which does not cite either *McDonnell* or *Burdine*, as altering the *McDonnell/Burdine* standard for Title VII retaliation cases under a disparate-treatment theory. [15] Furthermore, *Cosmair* is distinguishable from the instant case: Huber did not withhold Adams' benefits *simply because* Adams had filed a Title VII charge—Huber contends that it withheld benefits to preserve the tax qualified status of its benefit plan under ERISA. Huber's position is supported at least facially by its showing that benefits were withheld routinely for all severed employees who contested severance for any reason, not merely those whose contests were based on Title VII discrimination, if such contest could lead to reinstatement.

The EEOC also relies on this court's decision in *Ramirez v. Sloss*. [16] "In the rare situation in which the evidence establishes that an employer openly discriminates against an individual[,] it is not necessary to apply the mechanical formula of *McDonnell Douglas* to establish an inference of intentional discrimination; the showing has already been made directly." [17] Although *Ramirez* held that resort to the *McDonnell Douglas* formula is not necessary to establish the plaintiff's prima facie case when the defendant openly discriminates, [18] the EEOC's reliance on this case is misplaced. Even though the *Ramirez* court noted that the application of *McDonnell/Burdine* is not necessary when a defendant openly discriminates, that court nevertheless considered whether the defendant had rebutted the prima facie case "by proving a valid nondiscriminatory reason for his rejection." [19]

Although we agree that the district court erred in treating this case under a theory of a per se violation of Title VII, Huber's policy of withholding benefit plan funds does not fit neatly under the disparate-treatment theory of *McDonnell/Burdine* either. First, the adverse employment action in this case resulted from the enforcement of a policy—not from an individual determination that Adams' benefit plan funds should be withheld because she had filed an EEOC charge. Second, Huber's policy existed before Adams filed the EEOC charge. Thus, the policy of withholding benefits was not directed at Adams, and is difficult to understand as disparate treatment of Adams.

Instead, the adverse employment action, which stemmed from the enforcement of a policy, resembles more closely the type of employment practices analyzed under a disparate-impact theory. In *Griggs v. Duke Power Co.*, [20] the Supreme Court held that an employer could not require a high school education or passing of a generalized intelligence test as a condition of employment in or transfer to jobs when neither standard was shown to be *significantly* related to job performance and both requirements operated to disqualify black applicants at a substantially higher rate than white appli-

---

14. *Cosmair*, 821 F.2d at 1089 (emphasis added).

15. This court has previously set forth the *McDonnell/Burdine* standard as explained in *McMillan* in numerous cases. *See, e.g., Jones v. Flagship Int'l*, 793 F.2d 714, 724–25 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987); *McDaniel v. Temple Indep. School Dist.*, 770 F.2d 1340, 1346 (5th Cir.1985).

16. 615 F.2d 163 (5th Cir.1980).

17. Id. at 168.

18. *See id.* at 169.

19. *See id.* The *Ramirez* court, citing *Burdine*, held that the defendant bears the burden of *proof* on this issue. *Id.* at 169. The Supreme Court, however, reversed *Burdine* and held that after the plaintiff has proved a prima facie case of discrimination, the defendant bears only the burden of *explaining clearly* the nondiscriminatory reason for his actions. *Burdine*, 101 S.Ct. at 1097. If the defendant carries this burden of *production*, then the plaintiff must prove by a preponderance of the evidence that the nondiscriminatory reason offered by the defendant is not the true reason but a "pretext for discrimination." *Id.* at 1093–97; *see also Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 2126, 104 L.Ed.2d 733 (1989) (citing *Burdine*, 101 S.Ct. at 1094–95).

20. 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

cants.[21] Applying an impact theory to a retaliation case would proscribe an employer's enforcement of an employment policy that has a disparate impact on those engaging in protected activity under Title VII unless such policy has a *significant* relationship to a legitimate business purpose.

Until the Supreme Court's 1989 opinion in *Wards Cove Packing Co. v. Atonio*,[22] the distinction between a disparate-impact case and a disparate-treatment case was important, controlling such stages of the case as the burden of proof, the burden of persuasion, and the burden of going forward with the evidence. In *Wards Cove*, however, the Supreme Court held that the employer carries the burden of *producing evidence* of a business justification for the employment practice once the employee has established a prima facie case of disparate impact:

> The burden of persuasion, however, remains with the disparate-impact plaintiff.... "[T]he ultimate burden of proving that discrimination against a protected group has been caused by a specific employment practice remains with the

plaintiff *at all times.*" This rule conforms with the usual method for allocating persuasion and production burdens in the federal courts, and more specifically, it conforms to the rule in disparate-treatment cases that the plaintiff bears the burden of disproving an employer's assertion that the adverse employment action or practice was based solely on a legitimate neutral consideration. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256–58, 101 S.Ct. 1089, 1095–96, 67 L.Ed.2d 207 (1981). We acknowledge that some of our earlier decisions can be read as suggesting otherwise. But to the extent that those cases speak of an employers' "burden of proof" with respect to a legitimate business justification defense, they should have been understood to mean an employer's production—but not persuasion—burden.[23]

Because the burden-shifting rule of *McDonnell/Burdine* applies to both treatment and impact cases after *Wards Cove*, fewer distinctions remain between the two theories.[24] But, under either theory, the

**21.** *Id.* at 431–35, 91 S.Ct. at 853–56, 28 L.Ed.2d at 164–67.

**22.** 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989).

**23.** *Id.* at 2126 (citations omitted). In *Jones v. Flagship Int'l*, 793 F.2d 714, 714–25 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987), a Title VII retaliation case, this court quoted at length from the Supreme Court's discussion in *Burdine* of the burden on a Title VII defendant in rebutting the plaintiff's prima facie case, and the plaintiff's subsequent and ultimate burden:

> "The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame

the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.

> The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."

*Id.* at 725 n. 11 (quoting *Burdine*, 101 S.Ct. at 1094–95 (footnotes and citations omitted)).

**24.** Under a treatment theory, the employee must prove "rejection under circumstances which give rise to an inference of unlawful discrimination," *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207, 215 (1981), whereas under an impact theory, the employee need not prove intentional discrimination, but need only show that a certain employment policy has a disparate impact on a protected group, *see, e.g., Griggs v.*

EEOC in this case has made out a prima facie case.[25] An employer may, under a disparate-treatment theory,[26] defend on the basis that it made the adverse employment decision for a nondiscriminatory reason.[27] Indeed, disparate-treatment cases may be defended by showing a nonbusiness, even a frivolous motive or purpose, so long as the proffered reason is the true purpose or motive and is not a purpose or motive prohibited by Title VII.[28] Under a disparate-impact theory, however, the employer must defend by showing that the policy is significantly related to a legitimate business concern. Moreover, under an impact theory, the nondiscriminatory character of the actual motive does not suffice to overcome a prima facie case of disparate impact: if the impact of the policy is disparate, the non-prohibited nature of the employer's motive is no defense unless that motive is determined objectively to have a *substantial* business justification.

The EEOC elected to treat this case as a per se violation case, never advancing either a disparate-treatment or disparate-impact theory. It did, however, establish a prima facie case of disparate treatment that made it incumbent upon Huber to produce some evidence of a legitimate business purpose. Huber met its burden of showing a nondiscriminatory reason for the adverse employment action by producing evidence that the policy of withholding benefits was necessary to protect the tax status of the benefit plan.

In its order granting summary judgment in favor of the EEOC, however, the district court rejected this defense, finding that

*Duke Power Co.,* 401 U.S. 424, 430 n. 6, 91 S.Ct. 849, 853 n. 6, 28 L.Ed.2d 158, 163 n. 6 (1971). Also, under a treatment theory, an employer can defend by offering some nondiscriminatory reason for the adverse action. *See Burdine,* 450 U.S. at 254, 101 S.Ct. at 1095, 67 L.Ed.2d at 216 ("[The defendant must] rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons."). Under an impact theory, however, the employer must show more than some nondiscriminatory reason for the policy to successfully defend the charge of discrimination. The employer must show that the policy is significantly related to a legitimate business purpose such as successful job performance. *See, e.g., Griggs,* 401 U.S. at 432, 436, 91 S.Ct. at 854, 856, 28 L.Ed.2d at 165, 167 ("Congress has placed on the employer the burden of showing that any given requirement must have a manifest relationship to the employment in question," and Congress has forbidden "giving these devices and mechanisms controlling force unless they are demonstrably a reasonable measure of job performance."). Although the practice's business justification may not be "insubstantial," nevertheless, "there is no requirement that the challenged practice be 'essential' or 'indispensable' to the employer's business for it to pass muster." *See Wards Cove,* 109 S.Ct. at 2126.

25. The EEOC presented adequate summary judgment evidence to establish a prima facie case under the *McDonnell/Burdine* standard. First, Adams engaged in a protected activity under Title VII when she filed a charge with the EEOC. Second, Huber's assertion to the contrary notwithstanding, withholding plan benefits without interest is an adverse employment decision. Third, the EEOC established a causal connection between the participation in the protected activity and the adverse employment decision *Jack v. Texaco Research Center,* 743 F.2d 1129, 1131 (5th Cir.1984) ("The connection required is causation-in-fact or 'but for' causation."). Huber does not contest that the filing of the charge with the EEOC caused Huber to withhold the plan benefits. Huber may be under the misconception that causation requires a retaliatory motive in a pejorative sense. But the plaintiff need not show retaliatory motive to establish a prima facie case.

Likewise, the EEOC presented enough summary judgment evidence to establish a prima facie case under an impact theory. Huber's policy of withholding the benefits of any former employee who challenged the validity of his termination had a disproportionately higher impact on employees who engaged in protected activity under Title VII than on former employees who did not challenge their termination. Indeed, most, although not all, of Huber's employees who contested their termination did so on an EEOC basis.

26. We reject the EEOC's argument that this defense is not specifically contemplated by *McDonnell, Burdine,* and Fifth Circuit cases that have interpreted them. *See, e.g., McMillan v. Rust College, Inc.,* 710 F.2d 1112, 1116 (5th Cir. 1983). Even *Ramirez,* which the EEOC cites in support of its argument that the *McDonnell/Burdine* standard is not applicable to this case, recognizes such a defense.

27. *See supra* note 24.

28. *See Risher v. Aldridge,* 889 F.2d 592, 598 (5th Cir.1989).

"Defendant's assertions [were] mere conclusions and that no relevant evidence [had] been produced to uphold the business necessity defense." We disagree. In support of its business necessity/purpose defense, Huber presented as summary judgment evidence the affidavit of its Vice President in charge of personnel that the policy of withholding plan benefits "grew out of a concern expressed by [Huber's Administrative] Committee and legal counsel for preserving the tax qualified status and fiscal integrity of the [p]lans." This evidence is relevant to the business necessity defense, and although the affidavit does not fully explain exactly how the tax qualified status of the plan would be jeopardized by distributing benefit plan funds to former employees who challenge their termination, the statement is not "mere[ly] conclus[ory]."

If we were to analyze this case under a treatment theory,[29] once Huber produced a nondiscriminatory reason for its policy, the burden would shift to the EEOC to prove that the proffered reason is a pretext. But because this case more closely resembles an impact case, we will analyze it under the disparate-impact theory.

We are satisfied that the protection of the employee benefit plans' tax qualified status is the type of purpose that the Court had in mind in *Duke Power* as having a significant relationship to a legitimate business concern. Moreover, we find that Huber has met its burden of production. If the tax qualified status of the benefit plan could be jeopardized by distributing plan benefits to a terminated employee while the validity of the employee's termination is unsettled and a realistic possibility of reinstatement remains, then, given Huber's fiduciary obligations to the other plan participants, the policy of withholding benefit plan funds is not facially pretextual and appears to be significantly related to a legitimate business concern.

■ Once Huber produced evidence that its policy had a significant relationship to a legitimate business concern, the burden shifted to the EEOC to prove by a preponderance of the evidence that the policy was not in fact significantly related to a legitimate business concern. Presumably because the EEOC believed that Huber had committed a per se violation of the antiretaliation provision in Title VII, the EEOC made no effort whatsoever to prove either that the proffered nondiscriminatory reason was a pretext or, if not a pretext, that it was not significantly related to a legitimate business concern. Accordingly, the EEOC did not carry its burden of proof, so summary judgment in its favor was error.

On remand, the district court should apply the disparate-impact theory and should determine, per *Duke Power*, whether Huber's policy is in fact significantly related to a legitimate business concern, and whether Huber, under its plan and under ERISA, properly froze the amount of benefits upon segregation of a participant's benefits, without provision for interest or other gain.[30] Consequently, we reverse the district court's partial summary judgment for the EEOC on the issue of liability and remand to the district court for further proceedings consistent with this opinion.

### C. Equitable Estoppel

Huber argues that the EEOC was equitably estopped by a "no reasonable cause" determination it had issued in 1979 in response to a retaliation charge (Mims) essentially identical to the one brought by the EEOC on behalf of Adams in this case.[31] Huber contends that this defense at a minimum creates a genuine issue of material fact which precludes summary judgment in

---

**29.** During oral argument to this court, counsel for the EEOC repeatedly insisted that this case was a treatment case, not an impact case.

**30.** Although Huber has paid the plan benefits to Adams, the issue of whether Huber violated Title VII's antiretaliation provision is still justiciable because that issue controls the amounts owed to Adams in terms of plan earnings be-

tween segregation and distribution, prejudgment interest, and the propriety of an injunction.

**31.** *See* Notice of Right to Sue in *Mims v. J.M. Huber Corp.* (Mims Letter), Charge No. 041752007 (February 22, 1979).

favor of the EEOC. But there is no issue of fact about the prior determination, and the issue of equitable estoppel is a legal issue based on undisputed facts.

■ Section 713(b) of Title VII,[32] provides that persons who act "in good faith, in conformity with and in reliance on any written interpretation or opinion of the Commission" shall not be liable for such actions under Title VII. By regulation, however, a finding of no reasonable cause may not be relied on under this section unless it contains a statement that it is a "written interpretation or opinion of the Commission."[33] There was no such statement in the Mims determination letter; consequently, *statutory* estoppel does not apply.

■ Relying primarily on *Heckler v. Community Health Services*,[34] and *EEOC v. Westinghouse Electric Corp.*,[35] Huber argues that even if there is no statutory estoppel, the Mims letter equitably estops the EEOC from bringing the retaliation claim in this case. Given the provisions and requirements specified for estoppel in Title VII and the regulations promulgated thereunder, it is doubtful whether this court would recognize nonstatutory, equitable estoppel in a Title VII case.

Even if this court did recognize such a defense, however, Huber has failed to es-

tablish that defense in this case.[36] Because a regulation specifically precludes reliance on a no reasonable cause letter for the purpose of statutory estoppel under section 713(b) of Title VII,[37] Huber has failed to demonstrate that its reliance was reasonable. Accordingly, estoppel cannot apply.[38] In a case such as this, when the EEOC is seeking injunctive relief against future violations as well as monetary damages for a private party, the EEOC is operating in its public capacity.[39] Consequently, to establish estoppel, Huber must show "affirmative misconduct on the part of the EEOC."[40] Huber has failed to make a showing of affirmative misconduct in this case.

### D. Jurisdiction

Huber argues that the district court should have dismissed the complaint for lack of jurisdiction because no employment relationship between Huber and Adams existed at the time that Huber withheld plan benefits as required by Title VII. This court rejected a similar contention in *Cosmair*.[41] As the Tenth Circuit explained in *Rutherford v. American Bank of Commerce*,[42] one of the cases on which *Cosmair* relies, "[t]here is no ground for affording any less protection [against retaliation] to defendant's former employees than to its present employees" under Title VII.[43]

---

32. 42 U.S.C. § 2000e–12.

33. *See* 29 C.F.R. § 1601.33 (1989).

34. 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (medicare cost reimbursement case).

35. 632 F.Supp. 343 (E.D.Pa.1986) (ADEA case), *modified on other grounds,* 869 F.2d 696 (3d Cir.1989).

36. *See id.* at 358 (describing requirements in ADEA case).

37. 42 U.S.C. § 2000e–12.

38. As this court explained in *Beverly v. Lone Star Lead Constr. Corp.,* 437 F.2d 1136, 1141 (5th Cir.1971): "The [EEOC] is neither required nor physically able to conduct an 'in depth' investigation in every case."

39. *Westinghouse,* 632 F.Supp. at 358 n. 4.

40. *Id.* at 358; *see also Heckler,* 104 S.Ct. at 2224 ("[I]t is well settled that the Government may not be estopped on the same terms as any other litigant.").

41. 821 F.2d at 1088 (relying on Title VII cases to hold that the term "employee" in the antiretaliation provision of the ADEA "includes a former employee as long as the alleged discrimination is related to or arises out of the employment relationship"); *see also Hodgson v. Charles Martin Inspectors of Petroleum, Inc.,* 459 F.2d 303, 306 (5th Cir.1972) (former employees covered by antiretaliation provision of Fair Labor Standards Act).

42. 565 F.2d 1162 (10th Cir.1977).

43. *Id.* at 1166.

### E. Prejudgment Interest

Huber contends that the district court erred in awarding prejudgment interest. Because we are reversing the district court's partial summary judgment for the EEOC on liability and remanding for further proceedings, we do not reach this issue.[44]

### F. Injunction

Huber also argues that the district court abused its discretion by awarding injunctive relief. Because we are reversing the partial summary judgment on the issue of liability, we must also lift the injunction. If, after further proceedings, the district court determines that Huber violated Title VII in withholding plan benefits, it may at that time reconsider the propriety of issuing an injunction, as well as the breadth of such injunction should one be issued.

### IV.

### CONCLUSION

For the foregoing reasons, we RE-VERSE the district court's judgment for the EEOC, VACATE the injunction, and REMAND to the district court for further proceedings consistent with this opinion.

---

**44.** The issue of prejudgment interest is inexorably intertwined with the issue of whether it was proper under either the provisions of this plan or under ERISA, to the extent applicable, to "freeze" the amount of Adams' benefits between segregation and distribution without making any provision for interest or earnings.