Rebecca Duke **WINCHESTER**

v.

**GALVESTON YACHT BASIN.**

**Civil Action No. G–95–677.**

United States District Court,
S. Texas,
Galveston Division.

Nov. 5, 1996.

Anthony P. Griffin, Galveston, TX, for plaintiff.

Carla Jean Cotropia, Mills Shirley Eckel & Bassett, Galveston, TX, for defendant.

### ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

This is a Title VII case in which Plaintiff claims that she was compensated at a lower rate because of her gender and that she was discharged in retaliation for asserting her rights to equal pay and for assisting a fellow employee with a sexual harassment charge against their employer. Now before the Court is Defendant's Motion for Summary Judgment of October 10, 1996. For the reasons set forth below, Defendant's Motion is **GRANTED.**

### I. Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Issues of material fact are genuine only if they require resolution by a trier of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In other words, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushi-*

*ta,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). To meet this burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)). Summary judgment should be granted only if the evidence indicates that a reasonable fact-finder could not find in favor of the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

## II. Factual Background

Plaintiff began working for Defendant Galveston Yacht Basin ("GYB") in 1991 in the position of office manager. In 1993, new owners took over GYB, and Plaintiff acquired a new supervisor, general manager Robert Murray. When he arrived, Murray agreed to change Plaintiff's title to "business manager." At this time, the office secretary was Lori Fye, who was under Plaintiff's supervision. During the time of their mutual employment, Fye and Plaintiff did not get along, and this problem caused a great deal of office tension. The record indicates that Plaintiff and Fye's relationship was characterized by catfighting and backbiting. Eventually Murray tried to diffuse the situation by having Fye report directly to him instead of reporting to Plaintiff. Apparently the tension continued, and on March 7, 1994, Plaintiff received a reprimand letter from Murray regarding her relationship with Fye. The letter stated in part:

> On several occasions I advised you that one of your primary responsibilities here is to create and maintain a harmonious and efficient atmosphere while supervising and instructing the office staff, and in that respect you were not doing your job. You have not seen fit to heed this warning.
>
> . . . .
>
> I regret having this situation deteriorate to this stage. It has become obvious to business associates and reflects not only on our professionalism but also in the quality of the work done here. I trust you understand the seriousness of this matter and the consequences which will result unless it is corrected. (3/7/94 Letter of Reprimand).

This letter caused tension to increase between Murray and Plaintiff and resulted in an argument between the two in which Murray told Plaintiff her job was hanging by a thread and that it was her responsibility to change her attitude. The tense situation between Fye and Plaintiff ended when Fye terminated her employment with GYB in September 1994. New tension erupted, however, with the hiring of the new office secretary, Amy Collingsworth. Plaintiff was opposed to hiring Collingsworth and apparently did not get along with her either. Collingsworth complained to Murray about abusive treatment by Plaintiff and sometimes came to his office in tears as a result of this treatment. It also appears from the record that there was another office secretary at GYB before Murray who also complained about poor treatment from Plaintiff.

In February 1994, Rhonda Stevens, a security guard at GYB under Plaintiff's supervision complained about allegedly being sexually harassed by a fellow employee, Troy Lindahl. It is disputed whether she complained directly to Plaintiff, who then told her supervisor, Murray, or whether she complained to Murray directly about the alleged harassment. A meeting involving Plaintiff, Murray, and Lindahl took place the day after this complaint at which Lindahl was reprimanded for his actions. Lindahl was informed that he should not discuss with other employees what he had done or what reprimand he had received. Several months later, however, Plaintiff learned that Lindahl was discussing his reprimand with other workers. She reported this incident to Murray, who took the information from her. On June 30, 1994, Rhonda Stevens was discharged from GYB.

During the time of Plaintiff's employ with GYB, four other employees were on the same organizational level with her as managers of various areas of GYB. Plaintiff had received a substantial raise in 1993, and at the time of Plaintiff's discharge in January 1995, her sal-

ary was higher than two of the other managers and lower than the other two. Specifically, her salary was lower than that of Troy Lindahl, the marina maintenance and repair manager. Plaintiff had allegedly received an oral promise from her supervisor, Murray, to keep her salary equal to that of Lindahl's for as long as she worked there. Lindahl, however, received a raise for 1995, and Plaintiff did not. The two lower paid managers also received raises for 1995, but their salaries still remained below Plaintiff's salary. When Plaintiff realized she did not get a raise along with the other managers, she questioned Murray, who explained to her that she was not going to get a raise for 1995. Upon receipt of the news that she was not going to receive a raise, Plaintiff angrily confronted Murray and had "somewhat of a temper tantrum" in his office. (Deposition of Robert Murray, p. 17). This outburst by Plaintiff resulted in the issuance of a second reprimand letter. This letter stated in part:

> You are on probation in your position of employment here at Galveston Yacht Basin. Another display of temper and insubordination as occurred in my office on Friday morning and any indication I get of anything less than full respect, support and cooperation from you, will result in the termination of your employment. (1/9/95 Letter of Reprimand).

In this letter, Murray also notified Plaintiff that her salary as office manager was above the median annual salary for marina office staff personnel according to International Marina Institute survey. A few weeks later, on January 26, 1995, Plaintiff was discharged from GYB.

### III. Discussion

Plaintiff has two chief complaints in this case. First, Plaintiff alleges that she was discharged in retaliation for asserting her right to equal pay and for assisting Rhonda Stevens in her charge of sexual harassment. Second, Plaintiff alleges that she was compensated at a lower wage because of her gender. While this second allegation is present in Plaintiff's Original Complaint, she fails to address it in her Response to Defendant's Motion For Summary Judgment. Despite

the failure to respond on this issue, the Court will address each claim in turn.

■ Title VII makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e–3(a) (West 1994). To recover for a claim of retaliation under this provision, a plaintiff must make a prima facie showing (1) that she engaged in an activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that there was a causal connection between the activity and the adverse employment action. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir.1992); *Collins v. Baptist Memorial Geriatric Center*, 937 F.2d 190, 193 (5th Cir.1991). In order to show a causal connection between the activity and the adverse employment action, a plaintiff need not prove that engaging in the protected activity was the sole factor motivating the adverse action, but that "but for" the protected activity, she would not have been terminated. *Shirley*, 970 F.2d at 43; *Collins*, 937 F.2d at 193. Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to produce some nondiscriminatory reason for the termination. *Shirley*, 970 F.2d at 42 (citing *EEOC v. J.M. Huber Corp.*, 927 F.2d 1322, 1326 (5th Cir.1991)). If a defendant makes this showing, the burden shifts back to the plaintiff to show that the nondiscriminatory reasons given by the defendant were a pretext for retaliation. *Id.*

■ For the reasons set forth below, the Court finds that Plaintiff has failed to meet her prima facie case of retaliation. As to Plaintiff's claim of retaliation for assisting her fellow employee Stevens in bringing her sexual harassment charge, the Court finds that Plaintiff has met the first two elements of a prima facie case of retaliation. It is clear that assisting in bringing a charge of sexual harassment and opposing sexual harassment in the workplace are protected activities under Title VII. Moreover, it is undisputed that an adverse employment ac-

tion occurred in that Plaintiff was discharged from the employ of GYB. Plaintiff has failed, however, to demonstrate a causal connection between the protected activity and her discharge. The record indicates that Plaintiff had caused problems at work through her relationship with the office secretary prior to Stevens' bringing her charge of sexual harassment. It is also significant to note that although Plaintiff's first letter of reprimand came a month after Stevens complained of sexual harassment, the letter makes no mention of Plaintiff's involvement with that charge. Rather, it indicates that Plaintiff's job is in jeopardy because of Plaintiff's failure to get along with Lori Fye and her inability to maintain a stable office atmosphere. There appears to be no connection between Plaintiff's assistance in the sexual harassment charge and her reprimand at this time.

■ Similarly, there is no connection between Plaintiff's involvement in the sexual harassment charge and her eventual discharge. Plaintiff's discharge occurred almost one year after Stevens brought her charge. During this year, Plaintiff continued to create office tension because of her inability to get along with the new office secretary and because of her insubordinate and disrespectful attitude toward her supervisor. In fact, Plaintiff was issued a second reprimand letter in early January 1995 placing her on probation for her angry and insubordinate outburst at her supervisor, Murray. Thus, at the time of her discharge, one year after Stevens's sexual harassment charge, Plaintiff was the subject of two reprimand letters and was on probation for her difficult and insubordinate attitude toward her fellow workers and supervisor. Plaintiff offers no concrete evidence to indicate why it was not this attitude but instead her engaging in a protected activity that caused her to be discharged. Plaintiff testified in her deposition that her supervisor never made any threats to her job for discussing and being involved in the sexual harassment charge but that she "could tell he was getting tired of hearing about it" because of "[h]is tone of voice." (Deposition

of Rebecca Duke Winchester, p. 62). The Court finds this subjective, mind-reading type of evidence insufficient to establish a "but for" causal connection between Plaintiff's protected activity and her discharge. The Fifth Circuit has held that vague statements such as "'if you had not gone crying to your friends [at headquarters], you would not be in the position you are in'" are insufficient to defeat summary judgment on retaliation claims. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 436 (5th Cir.1995). The evidence presented by Plaintiff regarding the "feeling" she got from her supervisor does not even rise to the level of vague statements. Thus, the Court finds that Plaintiff has failed to establish a prima facie case of retaliation because she has failed to show a causal connection between Plaintiff's assisting in a charge of sexual harassment and her discharge.[1]

■ Plaintiff also maintains a claim for retaliation for asserting her right to equal pay. Plaintiff's allegations on this issue are vague, but as the Court understands it, Plaintiff claims that she was discharged in retaliation for complaining about the fact that she was compensated at a lower rate than other male managers because of her gender. Plaintiff alleges that three male managers received raises for 1995, and she did not. Her chief complaint appears to be that Lindahl received a raise that placed his compensation rate above hers, an act which allegedly violated a promise by Murray that her salary would always be commensurate with Lindahl's.

As with her other retaliation claim, the Court finds that Plaintiff fails to make out a prima facie case of retaliation. Title VII makes it unlawful to "discriminate against any individual with respect to his compensation ... because of such individual's ... sex." 42 U.S.C.A. § 2000e–2(a)(1) (West 1994). The Act further makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by

---

1. The Court notes that even if Plaintiff had established a prima facie case of retaliation, Defendant has presented sufficient evidence of nondiscriminatory reasons for her discharge to rebut this claim, and Plaintiff has failed to demonstrate that these reasons were mere pretexts.

this subchapter." *Id.* § 2000e–3(a). Thus, it is illegal for an employer to discriminate against an individual who opposes gender discrimination in compensation. If Plaintiff engaged in such opposition, she would be engaged in a protected activity under Title VII, thus establishing the first element of the prima facie case of retaliation. The Court finds, however, that Plaintiff has failed to establish that she was engaged in this kind of protected activity. The record shows that Plaintiff complained about her salary in 1993 and received a raise. There is no evidence, however, that this complaint was related to her gender. Rather, it appears that Plaintiff simply wanted to be paid more and threatened to resign if she was not. Plaintiff's complaints about her compensation in 1995 seem equally unrelated to her gender. When the male managers received a raise for 1995 and she did not, Plaintiff's chief complaint was that Lindahl was then making more money than her. Her complaint is rooted in the alleged promise made by Murray that she would always be paid the same as Lindahl, not in the fact that she is a woman. There is no evidence to indicate that she opposed the pay disparity on gender grounds. Thus, the Court finds that Plaintiff has failed to establish that she was engaged in a protected activity when she complained about her salary differential.

█ Even assuming arguendo that Plaintiff was engaged in a protected activity, her retaliation claim fails because she demonstrates no "but for" causal connection between the activity and her discharge. It is undisputed that she was discharged a few weeks after angrily complaining about her not receiving a raise, but the Court finds this proximity in time to be insufficient evidence to establish a causal connection. Moreover, Plaintiff received a reprimand letter after her complaint about the pay disparity, but the letter indicates that it was her *manner* of complaint rather that the complaint itself that resulted in the reprimand. The letter discusses Plaintiff's angry outburst and insubordinate attitude and places her on probation for this behavior. It appears that it was this behavior that led to her discharge, not her complaints about alleged gender discrimination in compensation. Plaintiff has failed

to offer any evidence that "but for" her complaints about the pay disparity, she would not have been discharged. As indicated above, Plaintiff had received a written reprimand prior to these complaints and was informed that her job was in jeopardy because of her inability to get along with fellow staff members. Thus, the Court finds that Plaintiff has failed to make out a prima facie case of retaliation for her disparate compensation claim. The Court adds that even if Plaintiff had established a prima facie case, Defendant has offered more than sufficient evidence of nondiscriminatory reasons for Plaintiff's discharge to rebut this claim, and Plaintiff has failed to show that these reasons were mere pretexts.

█ In addition to ·her retaliation claim, Plaintiff alleges that she was compensated at a lower rate because of her gender. This claim of gender discrimination in compensation is set out in Plaintiff's Original Complaint, but she fails to address it in her Response to Defendant's Motion for Summary Judgment. Because of the failure to address this issue, the Court is inclined to· treat Defendant's Motion on this issue as unopposed. Despite this inclination, the Court will briefly address this claim. As stated above, Title VII prohibits discrimination in compensation based on an individual's sex. 42 U.S.C.A. § 2000e–2(a)(1) (West 1994). To recover under this provision, a plaintiff "need not necessarily prove that she performed work equal to that of her better paid male colleague." *Merrill v. Southern Methodist University*, 806 F.2d 600, 606 (5th Cir.1986) (citing *County of Washington v. Gunther*, 452 U.S. 161, 170–71, 101 S.Ct. 2242, 2248–49, 68 L.Ed.2d 751 (1981); *Plemer v. Parsons–Gilbane*, 713 F.2d 1127, 1132 (5th Cir.1983)). If a plaintiff does not show that she performed equal work, the Fifth Circuit "hesitate[s] to mandate a finding of intentional discrimination on the basis of the pay differential alone in the absence·of evidence of the type adduced in *Gunther* and *Wilkins v. University of Houston*, 654 F.2d 388 (5th Cir.1981), *cert. denied*, 459 U.S. 822, 103 S.Ct. 51, 74 L.Ed.2d 57 (1982), where it was shown that the employers unexplainedly departed from objective pay criteria they had

adopted." *Merrill,* 806 F.2d at 607 (citing *Plemer,* 713 F.2d at 1133–34):

In this case, Plaintiff does not allege that she performed work comparable to that of the male managers. Nor does she offer evidence that GYB failed to follow preannounced objective pay criteria. Instead, the evidence she offers for her disparate compensation claim is that three male managers received pay raises for 1995, and she did not. This fact is not evidence of disparate compensation based on gender. It is significant to note that even when two of the managers received raises for 1995 and Plaintiff did not, Plaintiff still made more money than they did. In fact, she made significantly more than one manager, Raymond Burden. There is no evidence to indicate that the reason Plaintiff did not receive a raise along with the male managers was her gender. Instead, the record is replete with reasons why she could not, or should not, have received a raise for 1995. As discussed above, the year before, Plaintiff had been formally reprimanded for her behavior toward other members of the staff and warned that her job was in jeopardy because of this behavior. Thus, GYB had a valid, nondiscriminatory reason for denying Plaintiff a raise for 1995.

Plaintiff's true complaint regarding the compensation issue appears to be that Lindahl received a raise for 1995, which placed his salary above hers and allegedly violated a promise from Murray to keep their salaries equal. Even if this promise did exist and was enforceable, there is no evidence to suggest that Murray broke his promise to Plaintiff because of her gender. There are a number of neutral factors that may have caused Murray to award a raise to Lindahl and not award one to Plaintiff, such as prior salary increases, quality of prior performance, and length of service, not to mention the fact that Plaintiff had been extremely hostile and disrespectful to Murray in front of other staff members. In a nutshell, there is simply no evidence that Plaintiff was paid less than Lindahl because she is a woman. It is interesting to note that at the time of her discharge, Plaintiff was the fourth highest paid employee out of eighteen employees, thirteen of whom were males. Given the totality of the circumstances, the Court finds that Plaintiff has failed to establish a claim for disparate compensation based on gender. There is simply no evidence that gender was a significant factor in deciding not to award Plaintiff a raise for 1995.

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED.** Consequently, each and all claims asserted by Plaintiff against Defendant are hereby **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file nothing further on these issues in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons set forth in the Order issued by the Court this date, Defendant's Motion for Summary Judgment is **GRANTED** in its entirety. Each and every claim asserted by Plaintiff is hereby **DISMISSED WITH PREJUDICE.** Each party is **ORDERED** to bear its own taxable costs and expenses incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**