**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-41258
Summary Calendar
_____


REBECCA DUKE WINCHESTER,

Plaintiff-Appellant,

VERSUS

GALVESTON YACHT BASIN,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Texas
(G-95-CV-677)
_____

June 10, 1997
Before SMITH, DUHÉ, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Rebecca Winchester appeals a summary judgment in her retalia-tory discharge claims against Galveston Yacht Basin ("GYB") brought pursuant to 42 U.S.C. § 2000e-3(a) (West 1994).  Finding no error, we affirm.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Winchester was employed by GYB in various managerial capacities from 1991 to 1995. Beginning in 1993, Robert Murray was her immediate supervisor. After conflicts ensued between Winchester and Lori Fye, the GYB office secretary under Winchester's supervision, Murray issued Winchester a written reprimand in March 1994, advising her that "one of your primary responsibilities here is to create and maintain a harmonious and efficient atmosphere while supervising and instructing the office staff, and in that respect you were not doing your job." Murray noted further that "[y]our continued employment is dependent on your willingness and ability to defuse the tension and resentment in our office and return the operation to the higher standard of professionalism that I feel you are capable of. I will expect immediate and progressive improvement."

Although Fye terminated her employment with GYB in September 1994 and was replaced by Amy Collingsworth, tensions continued to run high. Collingsworth complained to Murray about Winchester's abusive treatment of her, which complaints prompted another reprimand from Murray. Collingsworth was later terminated within a few weeks of Winchester's termination because of her inability to perform the required work satisfactorily.

In the meantime, Rhonda Stevens, a GYB security guard under Winchester's supervision, complained in February 1994 that she had been sexually harassed by a fellow employee, Troy Lindahl.

2

Winchester attended a subsequent meeting with Lindahl and Murray, at which meeting Lindahl was reprimanded for his conduct and instructed not to discuss the incident with other GYB employees. Winchester later learned that Lindahl in fact had been discussing the Stevens incident with others and reported this to Murray. Stevens was terminated in June 1994.[2]

During Winchester's employ with GYB, she was on the same organizational level as four other GYB managers, all male. Her salary in relation to these other managers was a source of continuing interest to her, and she received in 1993, after threatening to resign, a substantial bonus that caused her to become the second highest paid of these managers. Winchester alleges that she was promised orally in 1993 that her salary would continue to be at least equal to Lindahl's.

When Winchester learned that in January 1995 Lindahl had received a pay increase (which increase moved Lindahl ahead of Winchester and into second place among the managers), she con-fronted Murray and was told that she would not be receiving an increase, as her pay was "suitable for the work that she did." Murray testified in his deposition that Winchester "was mad as hell because she was not offered a raise" and "had somewhat of a temper tantrum" in his office. This outburst prompted another letter of

_____

[2] Murray testified during his deposition that, per GYB policy, Stevens was not given a reason for her termination. He indicated, however, that she was fired for insubordination, upon recommendation by the office staff.

reprimand, in which Murray wrote, "Another display of temper and insubordination as occurred in my office on Friday morning and any indication I get of anything less than full respect, support and cooperation from you, will result in the termination of your employment." Winchester was terminated a few weeks later because, according to Murray, "[we] were unable to communicate on a calm and reasoned basis and I felt like that I had done all I could to preserve her in that job."

Winchester filed the instant action in October 1995, alleging that she was discharged in retaliation for asserting her right to equal pay and for assisting Stevens with her sexual harassment claims. Winchester also claimed that she had been compensated at a lower pay rate because of her sex. The district court granted GYB summary judgment on all of Winchester's claims.


II.

Winchester has abandoned her unequal pay claim on appeal but continues to assert that her termination constitutes impermissible retaliation. The district court concluded that this latter claim failed because Winchester had not produced sufficient evidence demonstrating that, but for her engagement in title VII protected activitiesSSprotesting her right to equal pay and assisting Stevens with her harassment claimsSSshe would not have been discharged. We agree.

4

We review a grant of summary judgment *de novo*. *See Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate (1) that he engaged in an activity protected by Title VII; (2) that an adverse employment action followed; and (3) that there was some causal connection between the activity and the adverse action. *See Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992). With respect to the third element, the plaintiff need not establish that his protected activity was the sole factor motivating the adverse action, but he retains the burden to demonstrate that, but for the protected activity, he would not have been subject to the action. *See Collins v. Baptist Mem'l Geriatric Ctr.*, 937 F.2d 190, 193 (5th Cir. 1991).

If the plaintiff makes out the *prima facie* case satisfactorily, the burden shifts to the defendant to proffer some non-discriminatory reason for the action. The plaintiff then assumes the burden of showing that the reason given by the defendant is a pretext for retaliation. *See Shirley*, 970 F.2d at 42.

Because GYB does not contest whether Winchester has satisfied

5

the first two elements, we assume *arguendo* that such is the case. With respect to the third element, Winchester asserts first that her assistance of Stevens "in pursuit of a harassment free environment" was "met by a wall of discriminatory opposition." According to Winchester, "[c]learly, the summary judgment proof demonstrates [GYB's] decisions to rid itself of liabilities and females who make trouble while keeping males who perpetrated the sexual harassment incidents."

Yet, Winchester offers no summary judgment proof, other than her conclusionary allegations, evincing that her assistance of Stevens in February and April 1994 was the *but for* cause of her termination of employment in January 1995. At best, her allegations of the handling of Stevens's harassment complaint, if true, demonstrate that GYB could have dealt with Stevens's complaint more appropriately and expeditiously, but, in any event, they have no bearing on the instant action. Winchester's attempts in the instant action to vindicate any rights that Stevens may have in relation to the harassment complaints do not further Winchester's efforts to demonstrate that her participation in the matter was a *but for* cause of her termination.

Winchester next contends that her complaints about her alleged pay inequity with the other managers were a "major reason" for her termination. Other than the proximity in time (two weeks) between her early January meeting with Murray, in which she had a "temper

6

tantrum" over Lindahl's pay increase, and her termination of employment, Winchester offers no summary judgment evidence to demonstrate that her efforts to ensure pay equity between males and females were a *but for* cause of her termination.  We have noted previously that the lapse of time between the protected activity and the adverse employment action is one of the elements in the entire calculation of demonstrating a causal connection, but it is not in itself conclusive.  *See Shirley*, 970 F.2d at 43-44 (declining to hold that the passage of fourteen months is legally conclusive proof against retaliation).[3]

Even assuming *arguendo* that Winchester's allegations make out a *prima facie* case, she has failed to offer evidence sufficient to call into question GYB's proffered non-discriminatory reason for her termination.  As Murray noted in his deposition, Winchester was terminated for her repeated (and documented) difficulties in managing others and for the insubordination she displayed toward Murray in regard to the pay dispute.  Winchester was put on written notice in March 1994 that she had failed to fulfill one of her primary responsibilities of creating and maintaining "a harmonious and efficient atmosphere" and that her "continued employment by Galveston Yacht Basin is dependent on your willingness and ability

---

[3] Although *Shirley* dealt with inverse factsSSthe defendant employer's seeking to use a relatively long lapse of time as conclusive proof of no retaliationSSwe do not veer from *Shirley*'s instruction that the lapse of time, even if urged by the plaintiff, is but one of the elements to be weighed in the causal connection calculus.

to defuse the tension and resentment in our office." She continued to have difficulties managing Collingsworth and ultimately conducted herself inappropriately with a "display of temper and insubordination" aimed at Murray in reference to her failure to obtain a pay increase for 1995.

As the district court noted, the reprimand letter that Winchester received in reference to her pay disparity complaint indicates that it was *not* the complaint itself that gave rise to her reprimand, but rather the *manner of complaint*. The summary judgment evidence demonstrates that Winchester's angry outburst and insubordinate behavior, not her complaints about alleged gender discrimination in compensation, triggered the letter and led to her discharge. Furthermore, even assuming *arguendo* that it was her complaint itself that caused Murray to terminate her employment, Winchester was not protesting that GYB was discriminating against her in pay on the basis of her sexSSa protected activity under title VIISSbut rather that she allegedly had been promised in 1993 that she would continue to receive the same pay as Lindahl. Her efforts to vindicate whatever contract rights existed under an alleged oral agreement are not sex-based and thus are not a protected activity under title VII.

That Winchester believes that others (namely, a jury) may view her insubordination and disruptive behaviorSSthe actions that GYB offers as an explanation for her terminationSSas appropriate

8

activities of a manager performing her duties does not satisfy her summary judgment burden. She simply has put forth no summary judgment evidence to create a genuine issue of material fact as to whether she was retaliated against for engaging in protected title VII activity.

AFFIRMED.