George S. ROBERTSON

v.

BELL HELICOPTER TEXTRON, INC.

No. 4:92–CV–535–E.

United States District Court,
N.D. Texas,
Fort Worth Division.

July 29, 1993.

Anthony Glenn Parham, Law Office of Anthony G. Parham, Irving, TX, for plaintiff.

Paul David Inman, Karl G. Nelson, Gibson Dunn & Crutcher, Dallas, TX, Timothy J. Hatch, Gibson Dunn & Crutcher, Los Angeles, CA, for defendant.

## MEMORANDUM OPINION AND ORDER

MAHON, District Judge.

Following a jury verdict in Plaintiff George S. Robertson's favor, Defendant Bell Helicopter Textron, Inc. ("Bell") has renewed its earlier motion for judgment as a matter of law, which it urged after the closing of plaintiff's case and again after both parties had rested. Because there is no evidence in the record to support the jury's findings on two issues essential to Robertson's claim, the Court grants the motion and enters a take nothing judgment in Bell's favor.

## BACKGROUND

Robertson was employed by Bell as a contract administrator for approximately six years. During the last period of his employment, he served as a senior contract administrator in the Army Helicopter Improvement Program ("AHIP"). In that position, he was responsible for, among other things, ensuring that AHIP costs were charged properly and requests for additional funding were substantiated. Beginning in at least early 1990, Robertson became concerned about the allocation to specific AHIP accounts of certain costs, which he wished to verify prior to requesting further funding from the government. He raised those concerns in several regularly held meetings with his supervisors, who indicated they would take responsibility for investigating the costs Robertson had pinpointed.

In February 1992, as part of a general reduction in its workforce, Bell determined it must eliminate two contract administrator positions in Robertson's section. Robertson, who was one of the two lowest rated persons in the section, was laid off. On the day after he received notice of the layoff, Robertson complained to a Bell equal employment opportunity officer that he was being laid off because of his age. He also mentioned that Bell might be engaging in improper cost-charging to the government but, when questioned in greater detail, said he did not know or have evidence of any fraud. Prior to his discharge, Robertson had never reported suspected wrongdoing on Bell's part to anyone within the company or its parent corporation, Textron.

Robertson subsequently commenced this action, asserting claims for: (1) age discrimination; (2) retaliation for reporting false claims in furtherance of a *qui tam* action under 31 U.S.C. § 3730[1] (the "retaliation" claim); (3) wrongful discharge for refusing to perform an illegal act (the "wrongful discharge" claim); and (4) estoppel. Bell moved for summary judgment on all but the age discrimination claim.

With respect to the retaliation claim, Bell argued that in order to be protected from retaliation under 31 U.S.C. § 3730(h), an employee must have reported any alleged false claims to the government. The undisputed facts showed that Robertson had never reported any suspected fraudulent charges to the government; rather, he had discussed certain concerns about the substantiation and verification of Bell's charges with his immediate supervisors. The Court granted Bell's motion on the retaliation claim to the extent it was based on *reporting* of false claims. However, resolving all doubts in favor of Robertson as the nonmovant, the Court found there was some evidence that Robertson may have *investigated* suspected overcharging in furtherance of a *qui tam* action, which conduct would be protected under section 3730(h). Though minimal, this evidence was sufficient to prevent summary judgment on the retaliation claim.[2]

---

1. A *qui tam* action under section 3730 is one brought by a private party on behalf of himself and the United States, charging that the defendant has presented false or fraudulent claims for payment or approval by the government. As discussed below, an employer may not retaliate against an employee because he has taken actions in furtherance of a *qui tam* lawsuit.

2. Bell did not address the issue of investigation in its motion for summary judgment, apparently because Robertson's complaint and response to the motion were focused solely on his alleged reporting of false claims, not on any investigations he had conducted. In retrospect, the Court was overly generous in permitting Robertson to pursue the retaliation claim on the latter, previously unasserted, ground.

Robertson proceeded to trial on only the retaliation and wrongful discharge claims.[3] After Robertson rested, Bell moved for judgment as a matter of law, which the Court denied. Bell renewed the motion after the close of evidence. Although the Court indicated it believed the motion had merit, it again denied the motion subject to later renewal.

The jury was instructed that in order to find for Robertson on the retaliation claim, they had to find that Bell knew Robertson was investigating alleged fraud by Bell in order to file or help the government to file a false claim action. One of the special verdict questions asked whether Bell had this knowledge. Robertson did not object to the instruction or verdict question on this issue. The jury found that Bell knew of Robertson's investigations in furtherance of a *qui tam* action. The jury also found that Bell had not given a reasonable nonretaliatory explanation for discharging Robertson.

### ANALYSIS

■ Bell seeks a judgment as a matter of law. The Fifth Circuit's standard for granting judgment notwithstanding the verdict (j.n.o.v.), now comprised in "judgment as a matter of law" under Fed.R.Civ.P. 50, is longstanding:

"If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting [judgment n.o.v.] is proper. On the other hand, if ... reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, [j.n.o.v.] should be denied, and the case submitted to the jury.... A mere scintilla is insufficient to present a question for the jury.... However, it is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses....

[T]he Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion [for judgment n.o.v.]."

*Molnar v. Ebasco Constructors, Inc.,* 986 F.2d 115, 117–18 (5th Cir.1993) (quoting *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969)).

### A. Bell had no knowledge of Robertson's *qui tam* investigations

Bell contends there is no evidence in the record that it knew Robertson was investigating allegedly fraudulent charging practices in furtherance of a *qui tam* action, an issue that was essential to Robertson's recovery on the retaliation claim. The Court agrees.

■ The *qui tam* statute pursuant to which Robertson asserts his retaliation claim, 31 U.S.C. § 3730(h), provides relief to:

any employee who is discharged ... by his or her employer *because of* lawful acts done by the employee on behalf of the employee or others *in furtherance of an action under this section,* including investigation *for,* initiation of, testimony for, or assistance in *an action filed or to be filed under this section.*

(Emphasis added). Clearly, an employer can only be held responsible for discharging an employee *because of* the employee's actions in furtherance of a *qui tam* lawsuit if the employer *knows* the employee took actions in furtherance of such a lawsuit.

As Bell points out, there is not even a scintilla of evidence in the record that Bell knew Robertson was pursuing investigations in furtherance of a *qui tam* action.

### 1. Robertson did nothing to inform Bell

Robertson's testimony established that he did nothing to inform Bell of his investigations. He testified:

---

**3.** The Court granted summary judgment on the estoppel claim and Robertson simply dropped his age discrimination claim, possibly in response to the Court's advice that it was inconsistent with his wrongful discharge claim. Although the Court, too leniently, permitted Robertson to present evidence on both the retaliation and wrongful discharge claims, it instructed the jury it could find for Robertson on only one of the claims.

Q. So by June of 1991 you were taking steps in furtherance of an investigation of a qui tam action?

A. Yes.

Q. Did you bring that to anybody's attention, or was that simply your own private thought?

A. Well, it was my own private thought. Why would I speak up at the company and tell them I was filing—I was sitting there trying to get information to file a qui tam action that I knew I would be filing?

Tr., Vol. II at 66.

Bell's code of ethics required employees to report any wrongdoing, including fraudulent cost-charging, to their supervisors. The policy also permitted such wrongdoing to be reported to an ethics group, an anonymous hot line or persons within Textron, Bell's parent corporation. Yet, Robertson never reported any suspected mischarging through these channels prior to his notice of discharge. He did not do so, at least in part, because he believed he would be terminated if he did. Tr., Vol. II at 101. Thus, if anything, Robertson intentionally kept secret any suspicions he had that Bell's charges to the government might be fraudulent.

### 2. *Nothing about Robertson's actions put Bell on notice*

Robertson testified that as a regular part of his responsibilities, he was required to verify any costs charged to the government and to be assured of their validity before submitting funding requests. *E.g.*, Tr., Vol. II at 59. It was also his job to determine whether performance could be completed within contract funding. Tr., Vol. II at 100. To carry out these responsibilities, he had to ask for data from other people. *Id.* He was to report the results of any investigation to his supervisors. Tr., Vol. II at 106.

Although Robertson stated that his *qui tam* investigations differed from those he was required to carry out as part of his job, he could not define the difference other than to say his job didn't *require* him to go quite as far as he did to confirm the proposed charges. *E.g.*, Tr., Vol II at 105–06. According to Robertson, he became concerned about and began investigating Bell's charges to the government in the beginning of 1990. Tr., Vol. II at 26. Robertson thought his initial investigations *were* within the scope of his job responsibilities. Only a year or so later, that is, sometime in the first half of 1991, did he begin to consider the possibility of a *qui tam* suit. *Id.;* Tr., Vol. II at 109. After that time, the only steps he took were to continue what he had already been doing, that is, asking other people to obtain information for him. Tr., Vol. II at 109.

In fact, Robertson's alleged *qui tam* activity was limited to talking with three individuals in different departments regarding where they were charging certain items. Tr., Vol. II at 106–09. He was not sure, however, whether his discussions with one of those people were part of his job responsibilities or not. Tr., Vol II at 107. Further, his testimony showed that the large majority of his conversations with the other two took place *before* he even conceived of bringing a *qui tam* action. Tr., Vol II at 107–09 (requested information from Ms. Adams in the spring to summer of 1990, maybe once again in early 1991; spoke to Mr. Turner a couple of times throughout 1990 and probably once again in early 1991). Thus, all the evidence showed that Robertson's alleged *qui tam* investigations were identical to those conducted as a part of his job, with the exception of Robertson's personal thoughts about them.

Nor did Robertson express any concerns to his supervisors in a manner that would have alerted them he was doing anything other than his expected job of verifying charges prior to submitting them to the government. What he said was that he needed more information before he would feel comfortable submitting funding requests. There was no implication that Robertson was investigating suspected wrongdoing. Indeed, Robertson testified that before his termination, he never used the terms "illegal," "unlawful" or "*qui tam* action" in characterizing his concerns about verifying Bell's charges. Tr., Vol. II at 47.

Moreover, Robertson kept no record of his alleged false claims investigations that might have alerted Bell to the nature of his activities:

Q. Did you keep a file of issues or documents that you thought went—were in support of this qui tam action which you were contemplating?

A. No, I didn't.

Q. And why not?

A. I just didn't keep a file.

Q. Did you write any memos, anything to yourself, a diary, any contemporaneous record that would express your feeling that you were investigating something in furtherance of a qui tam action?

A. No. I remember everything—I remember very well, and I took everything— I had everything in my head of what I needed to remember.

Tr., Vol. II at 110–11.

In other words, there was simply no objective basis for anyone other than Robertson to know that his investigations to verify certain charges, which even he believed to have been part of his job responsibilities originally, had been transformed into actions taken in furtherance of a *qui tam* action.

3. *Robertson's supervisors uniformly were unaware he was doing anything other than his job*

In keeping with Robertson's silence on the matter, every single one of his supervisors testified they were unaware of any *qui tam* investigations by Robertson or, indeed, of any concerns or investigations that went beyond his duties as a contract administrator. Mr. Leavell, Robertson's immediate supervisor during the majority of his time at Bell, testified:

Q. Did Mr. Robertson ever indicate to you that he was undertaking any investigations beyond the scope of his job responsibilities?

A. He did not.

Tr., Vol. III at 110. Mr. Wilson, a higher level supervisor whose action in assigning Robertson a "3" instead of the "3+" rating recommended by Mr. Leavell is argued by Robertson to be evidence of retaliation, testified:

Q. When you assigned the rating of a 3 to Mr. Robertson in 1991, had it come to your attention that Mr. Robertson was raising concerns about potential unlawful or improper activities on behalf of Bell Helicopter?

A. No, sir.

Q. Nothing at all?

A. In the course of his work he would have been raising concerns or questions about any cost that may not have been as he had thought they would be charged, but that's part of the job of a contract administrator.... [T]hat's a normal contract administration function that we do on a daily basis. There was no—nothing unusual.

Tr., Vol. III at 59–60. Robertson did nothing to rebut his supervisors' testimony regarding their lack of knowledge that he was conducting investigations outside the scope of his job responsibilities in furtherance of a *qui tam* action. In fact, Robertson never even testified that *he* believed his supervisors knew or had reason to know he was investigating in furtherance of such an action.

4. *Robertson has not pointed to any evidence supporting the jury finding regarding Bell's knowledge*

Nonetheless, Robertson argues that certain indirect evidence supports the jury finding that Bell knew of his false claims investigations. Specifically, he cites testimony that: (1) he expressed his "concerns" about certain cost items to his supervisors; (2) his supervisors are aware that filing false claims is illegal; and (3) *he* believed his attempt to verify certain charges went beyond his job responsibilities.

None of this testimony, however, conflicts with the undisputed direct evidence that Bell was unaware of Robertson's alleged *qui tam* investigations. Nor, in the light of the record as a whole, could this evidence support an inference that Bell knew of such investigations. According to all the testimony, including Robertson's, he raised his concerns solely in the ordinary course of his duties as a contract administrator and in terms that indicated no ulterior purpose. That Robertson's supervisors are aware that fraudulent charging is illegal shows nothing about the issue at hand—they could not properly carry out their jobs without that knowledge. Fi-

nally, there is not a shred of evidence that Robertson's personal, unexpressed belief regarding the nature of his investigations (which were in actuality requests that other people investigate and provide him with certain information) manifested itself in any objective form or action that did or even could have put Bell on notice.[4]

Having reviewed all the evidence in the light and with all inferences most favorable to Robertson, the Court concludes that there was no basis, other than pure speculation, on which the jury could have concluded that Bell knew Robertson was acting in furtherance of a *qui tam* action (Special Verdict Question No. 2). Because such knowledge was a predicate for a finding that Bell discharged Robertson *because of* his actions in furtherance of a *qui tam* action, the Court finds that the jury finding to that effect (Question No. 3) also was unsupported by the evidence and must be reversed.

### B. *Pretext*

▆▆▆ Bell also contends there was insufficient evidence to support the jury's finding that its proffered reason for discharging Robertson was pretextual. Again the Court agrees.[5]

Bell introduced evidence to show Robertson was discharged as part of a general layoff spread over all Bell's departments.

After determining that two persons in Robertson's department had to be laid off, and examining the ratings for the department's employees, Mr. McCrary, the supervisor in charge of the layoff decision, found that Robertson had the lowest rating for the last year, a "3". Subsequently, because there were several people who had been graded a "3+", McCrary also looked at the preceding year. Robertson remained in the bottom two and he and the other lowest rated employee were laid off.

Robertson argues there were three pieces of evidence that supported the jury finding of pretext. First, although Robertson's immediate supervisor had rated him a "3+", the second supervisor up the chain, Mr. Wilson, lowered the rating to a "3".[6] Second, Robertson introduced the rating sheets for four employees in Robertson's department that had received, in addition to a grade on a 1 through 5 system, a grade on a scale of 1 to 100. In his closing argument, Robertson's attorney argued that had Robertson been graded on the latter scale, he would not have been one of the two laid off. Finally, Robertson introduced a document from six months after he was laid off purportedly showing there was a contract administrator position open both before and after he was laid off (Plaintiff's Exhibit 8).

---

**4.** Without directly stating, Robertson implies that there was no need to prove Bell knew any investigations he may have done were *in furtherance of a qui tam action*. The Court finds no merit in his suggestion. While it is possible that in some situations the employer's knowledge that an employee was acting in furtherance of a *qui tam* action could be inferred, in this case the indistinguishable nature of Robertson's job responsibilities and his alleged *qui tam* activities prevents such an inference.

The Court takes judicial notice that, in fact, Robertson did not actually file a *qui tam* action until March 9, 1993, over two years after his discharge and well after the filing of this action. On June 14, 1993, the United States notified the Court of its election to decline to intervene in that case, No. 4:93–CV–152–A, and Robertson filed a notice of voluntary dismissal of the action.

**5.** Question No. 4 asked whether the jury found by a preponderance of the evidence that Bell had established a reasonable non-retaliatory explanation for discharging Robertson. If the jury's

finding was negative, it did not have to go on to find that Bell's explanation was a pretext for retaliation. Under governing law, however, Bell did not have the burden of persuasion, but only of producing legally sufficient evidence of the reasons for Robertson's discharge. *See, e.g., Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981) (cited as governing retaliation claims in *E.E.O.C. v. J.M. Huber Corp.*, 927 F.2d 1322, 1326 (5th Cir.1991)). Because Bell offered substantial evidence that it discharged Robertson as a result of his rating, the Court therefore interprets the jury's finding as equivalent to a determination that the offered reason was a pretext.

**6.** Mr. Wilson explained his determination to lower Robertson's grade on the ground that Robertson had been late consistently and that Robertson's supervisors had to rewrite letters for him on a number of occasions. This explanation was corroborated by other testimony and documents introduced by Bell.

None of these facts was sufficient to prove Bell's explanation was a pretext for retaliation. To begin with, Robertson did not show that any of this evidence was even relevant to the determination to lay him off. As the Court noted during argument on Bell's motion for judgment as a matter of law, even had Robertson received a "3+" rating for the most recent year, he still would have been one of the two lowest rated employees in his department based on the past two years' ratings that Bell reviewed and thus still would have been one of the two laid off.[7] With regard to the 1 to 100 rating system, the testimony showed it was used by a supervisor other than Robertson's. There was no evidence that Robertson was ever rated on the 1 to 100 scale or that Mr. McCrary considered the employees' ratings on other than the 1 to 5 scale in determining whom to discharge. Robertson's counsel's argument that Robertson would not have been among the lowest two employees had he been rated on the 1 to 100 scale was purely speculative, had no foundation in evidence, and should not have been considered by the jury.[8] Similarly, Robertson never established the relevance of the apparent opening for a contract administrator to his own layoff. On its face, Plaintiff's Exhibit 8 shows an opening for a contract administrator, whereas Robertson was a *senior* contract administrator, a higher position. Without further factual support, Exhibit 8 could not be a basis for finding pretext.

■ In addition, the evidence referred to by Robertson does nothing to support a finding that Bell's reason for his discharge was a pretext *for retaliation.* As the Fifth Circuit has noted in the context of an age discrimination claim, the mere fact that there are some inconsistencies in the termination procedure is insufficient to prove the employer's explanation is a pretext for discrimination (here retaliation). "To make out a[ ] [retaliation] claim, the plaintiff must establish the existence of discrete facts that show some nexus between the employment actions taken by the employer and the employee's [protected behavior]." *Moore v. Eli Lilly & Co.,* 990 F.2d 812, 819 (5th Cir.1993). *See also St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (discrimination plaintiff must prove not only that employer's reason for discharge is false, but also that *discrimination* was the real reason). Here, Robertson failed to prove that Bell knew he was conducting investigations in furtherance of a *qui tam* action and accordingly failed to prove that Bell discharged him because of such investigations. Without such proof, Robertson never established a *prima facie* case of retaliation and the jury never should have reached Bell's explanation of Robertson's discharge. Nonetheless, even if the jury properly had reached the issue of pretext, there is not one iota of evidence in the record supporting a finding that Bell's real reason for the discharge was retaliation.

The jury's finding on pretext must also be reversed.

## C. *Bell's motion is proper*

■ Robertson contends that in moving for judgment as a matter of law during trial, Bell did not adequately state that the motion was based on the lack of evidence of Bell's knowledge of Robertson's *qui tam* investigations. A review of the earlier oral motions shows, however, that Bell raised the lack of evidence with regard to Bell's knowledge. *See* Tr., Vol. III at 197 (no concerns about Bell's charging were ever communicated to anyone at Bell except in the ordinary course of Robertson's business); Tr., Vol. III at 198 (there was no evidence that any of Robertson's supervisors knew he was investigating fraud; without proof of such knowledge, also impossible to prove there was retaliation because of such investigation); Tr., Vol. III at 201–02 (Robertson never said Bell's charging was fraudulent or that he was investigating fraud; whatever was in his mind [with re-

---

7. Robertson received a "3+" the year before. The two persons rated immediately above Robertson and the other employee laid off each received "3+" for the current year and "4" for the prior year.

8. The Court's instructions stated that the argument of counsel was not evidence.

gard to a *qui tam* investigation], Bell didn't know about it).

The Court finds that Bell laid the proper foundation during trial for renewing its motion for judgment as a matter of law.

### D. *Robertson is not entitled to a new trial on his wrongful discharge claim*

■ Although the parties have not addressed the issue, the Court must consider whether, once judgment as a matter of law is granted on Robertson's retaliation claim, he is entitled to a jury determination on his wrongful discharge claim. The jury did not reach the latter claim since it was instructed it could not do so if it found Robertson had been discharged in retaliation for investigations taken in furtherance of a *qui tam* action.

■ The Court holds that Robertson is not entitled to a jury determination of his wrongful discharge claim. This Court was overly lenient in permitting Robertson to take that claim to the jury at the same time that he was claiming retaliation. The Fifth Circuit, applying Texas law, has made it clear that "an employee who alleges wrongful discharge for refusing to perform a criminal act *cannot advance additional claims.*" *Pease v. Pakhoed Corp.,* 980 F.2d 995, 997 n. 1 (5th Cir. 1993) (emphasis added). In particular, because the refusal to perform an illegal act must be the *sole* reason for the plaintiff's discharge, a second claim that the plaintiff was fired for another reason, such as age discrimination or retaliation, is mutually inconsistent with the claim of wrongful discharge. *See Guthrie v. Tifco Industries,* 941 F.2d 374, 379 (5th Cir.1991).

In the earlier order on summary judgment, the Court warned Robertson that by continuing to urge his retaliation claim, he was contradicting his claim for wrongful discharge. Robertson nevertheless proceeded to trial on his retaliation claim. Even now, he argues there was sufficient evidence to show his discharge resulted from retaliation and that judgment in his favor on that claim should be entered. The Court finds that Robertson's position with respect to the retaliation claim is inconsistent with and negates his wrongful discharge claim. Therefore, although there is insufficient evidence to support the verdict on the retaliation claim, the Court concludes that Robertson's claim for wrongful discharge must be dismissed as a matter of law.

### CONCLUSION

Although the Court is hesitant to overturn a jury verdict, and would not do so were there any evidence that could reasonably support the jury's findings, this is the unusual case where the jury's findings were clearly based solely on prejudice or speculation and not on the evidence or reasonable inferences therefrom.[9] Having reviewed all the evidence in the light most favorable to Robertson, the Court concludes that there was insufficient evidence to support the jury's findings that: (1) Bell knew of Robertson's alleged investigations in furtherance of a *qui tam* action; (2) Bell discharged Robertson because of such investigations; and (3) Bell's proffered reason for discharging Robertson was a pretext for its real reason, which was retaliation.

Accordingly, the Court ORDERS that Bell's motion for judgment as a matter of law is GRANTED. A judgment in Bell's favor shall be issued herewith.

---

9. The jury also improperly speculated with respect to damages. The jury was instructed it could award Robertson any costs *actually expended* in replacing fringe benefits he would have received had he not been discharged. *See Brun-* nemann *v. Terra Internat'l, Inc.,* 975 F.2d 175, 178 (5th Cir.1992). Robertson put on no evidence that he had incurred such costs. Nonetheless, the jury awarded $22,200 for such expense.