IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 8, 2007

Charles R. Fulbruge III
Clerk

No. 07-50666
Summary Calendar

ROSHERN AMIE

Plaintiff - Appellant

v.

EL PASO INDEPENDENT SCHOOL DISTRICT

Defendant - Appellee

Appeal from the United States District Court for the
Western District of Texas, El Paso
No. 3:06-CV-113

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Roshern Amie brought suit against defendant-appellee El Paso Independent School District, alleging that he was subjected to racial discrimination and retaliation, in violation of Title VII and the Texas Commission on Human Rights Act. The district court granted summary judgment to El Paso Independent School District, effectively dismissing all of Amie's claims. Amie now appeals the district court's grant of summary

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

judgment, arguing that a genuine issue of material fact remains with respect to his discrimination and retaliation claims. Amie also appeals the district court's decision to strike an affidavit he submitted as evidence of his allegations. For the following reasons, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-appellant Roshern Amie, who is an African American, has been employed with defendant-appellee El Paso Independent School District ("EPISD") since 1984 as a teacher and athletics coach. From 1984 to 1997, Amie was a teacher and basketball coach at both the middle and high school levels. In 1989, Amie became the head varsity basketball coach and a physical education teacher at Andress High School. During Amie's nine seasons as Andress's head coach, Amie's teams won two district championships, three bi-district championships, and held a top ten ranking in Texas. Amie also played college basketball for the University of Texas at El Paso for four years, scoring 1100 career points, which ranks him as the sixth best scorer in school history.

In 1997, Amie was relieved of his coaching duties and transferred to Canyon Hills Middle School, where at present he teaches health and physical education. In 2001, Amie filed a lawsuit against EPISD alleging racial discrimination, after he was not selected for other coaching positions. The suit was settled in May, 2003, when Amie and EPISD executed a Release of All Claims and Settlement Agreement. EPISD considers coaching to be "supplemental duties" and pays a stipend on top of a teacher's normal salary for a teacher to coach. In settling the prior suit, Amie agreed that he was being fully compensated for all future damages arising from the denial of any supplemental duties for the rest of his teaching career, and that he would not be entitled to any additional compensation for any supplemental duties in the future.

In September, 2005, Amie applied and interviewed for the head varsity basketball coach position at Bowie High School. When a coaching position is vacant in EPISD, a selection committee is formed to interview and consider the qualified applicants. All of the candidates are screened for minimum qualifications prior to the interview. The Bowie Selection Committee (the "Committee") chooses its top candidate, which, assuming the individual is qualified to be a teacher, is approved by the Human Resources Department. At the time of the interview, Amie had not held a coaching position at any level for eight years—since March 1997—other than in a city league.

Amie was not selected for the head coach position. Rather, Peter Morales, who is Hispanic and had not previously served as a head basketball coach, was hired as the new coach. According to EPISD, the emphasis for Bowie was to ensure that student athletes did well in the classroom and on the basketball court. At the time of the head coach hiring process, Bowie students were poorly performing in reading and math. Additionally, Bowie had received negative publicity for having a high dropout and pregnancy rate. All candidates interviewed for the head coach position were deemed qualified and had some basketball coaching experience. The Committee took notes on each applicant's answers and enthusiasm for the job, and determined Morales was the best choice.

On February 24, 2006, after receiving a "Right to Sue" letter from the Equal Employment Opportunity Commission ("EEOC"), Amie filed suit in state court in El Paso County, Texas, claiming that EPISD engaged in race discrimination and retaliation, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2a, 2000e-3, and the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE ANN. 21.051 (Vernon 2006).[1] EPISD

---

[1] "The purpose [of] the TCHRA is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964." Pineda v. United Parcel Servs., Inc., 360 F.3d 483, 487 (5th Cir.

removed the case to federal court on March 21, 2006, on the basis of federal question jurisdiction. See 28 U.S.C. §§ 1331, 1441.

Subsequently, on January 30, 2007, EPISD moved for summary judgment on all of Amie's claims. On February 9, 2007, Amie responded and provided the affidavit of Francis Wever, a former employee of EPISD and current President of the El Paso Federation of Teachers and Support Personnel, as evidence of his allegations. EPISD replied on February 21, 2007, and moved to strike the affidavit of Wever, asserting that the it was not based upon personal knowledge and was conclusory. On March 1, 2007, the district court agreed with EPISD and struck the Wever affidavit. Amie moved for reconsideration of the decision to strike on March 16, 2007, which the district court denied.

On April 24, 2007, the district court issued its Memorandum Opinion and Order granting summary judgment to EPISD.[2] The district court concluded that Amie had established a prima facie case on his discrimination claim, but that EPISD had established a legitimate, nondiscriminatory reason for not selecting Amie, and Amie had not provided sufficient evidence of pretext. On the retaliation claim, the district court concluded that Amie had not established a prima facie case because the evidence proffered was insufficient to prove a causal link between the protected activity and the adverse employment decision. Amie timely filed his notice of appeal on May 16, 2007.

---

2004) (citing Tex. Lab.Code § 21.001(1) (Vernon 1996); Quantum Chem. Corp. v. Toennies, 47 S.W.3d 473, 476 (Tex. 2001)). Therefore, "'analogous federal statutes and the cases interpreting them guide' the reading of the statute." Id. (quoting Quantum, 47 S.W.3d at 476).

[2] The district court did not enter a separate judgment pursuant to Federal Rule Civil Procedure 58. However, the lack of a separate judgment is not a jurisdictional bar to appeal. Instead, "where the parties voluntarily proceed on appeal from an otherwise final and appealable order but lack a Rule 58 separate judgment, the courts of appeals may hear the appeal." Baker v. Mercedes Benz of N. Am., 114 F.3d 57, 60 (5th Cir. 1997). In this case, neither party takes issue with the lack of a Rule 58 separate judgment, and therefore, this appeal proceeds despite the error.

## II. DISCUSSION

We first consider the district court's evidentiary ruling striking the Wever affidavit because Amie relied heavily on it in his attempt to establish a genuine issue of material fact in opposing EPISD's motion for summary judgment. Although the district court did not explicitly provide its reasoning for striking the Wever affidavit, its order "granted" EPISD's objections, namely that the affidavit failed to set out the basis of Wever's alleged personal knowledge or to lay any foundation for her conclusions.

We review a district court's evidentiary rulings, including the decision to strike an affidavit, for abuse of discretion. Fin. Acquisition Partners LP v. Blackwell, 440 F.3d 278, 285 (5th Cir. 2006); Hollis v. Am. Airlines, Inc., 138 F.3d 1028, 1030 & n.2 (5th Cir. 1998). We accord considerable deference to the district court's evidentiary rulings, in light of our recognition that the trial judge better understands the effect and likely probative value of proffered evidence than the appellate court. Hardy v. Chemetron Corp., 870 F.2d 1007, 1009 (5th Cir. 1989). We will not reverse a judgment on the basis of an erroneous evidentiary ruling unless it affected the "substantial rights of the parties." Stitt Spark Plug Co. v. Champion Spark Plug Co., 840 F.2d 1253, 1259 (5th Cir. 1988) (citing FED. R. EVID. 103(a)).

In the summary judgment context, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e).

With respect to the hiring practices of EPISD, Wever provided in her affidavit that "[i]t is the policy of the EPISD to select the best-qualified applicant in filling vacancies. The meaning of the best-qualified applicant is the applicant who has the greatest experience, education, background, and qualities superior to other applicants regarding the applied-for vacancy." Based on this definition,

Wever stated that a comparison of Amie's and Morales's résumés makes it "quite clear" that Amie was the "most qualified candidate" because Amie had nine seasons of head basketball coach experience, whereas Morales had none. Then, Wever stated, "Recommending Morales over Amie was a clear violation of the district policy to hire the most qualified candidate." Attached to the Wever affidavit was a copy of an EPISD regulation on Employment Practices.

The attached EPISD regulation corroborated Wever's assertion that the goal in filling vacancies is to select the best qualified applicant, but it did not provide EPISD's definition of the term "best qualified" or the standards used in selecting candidates. Thus, Wever's definition of best qualified must be based on her own personal knowledge. "Affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge." El Deeb v. Univ. of Minn., 60 F.3d 423, 428 (8th Cir. 1995). The Wever affidavit lacks such factual support. Amie urges that Wever, as a former employee of EPISD for over twenty years, has the requisite familiarity and knowledge to make such statements regarding the hiring policies of EPISD. Nevertheless, there is no indication that Wever was ever involved in the hiring process at EPISD, or that she had access to any unpublished standards EPISD used in determining which candidate is best qualified. Moreover, because Wever does not possess any specialized knowledge on EPISD's hiring practices, Wever's comparison of Amie's and Morales's résumés would not be helpful to the trier of fact. See FED. R. EVID. 701 ("[W]itness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are . . . helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."). The fact finder could just as easily compare the two résumés to determine whether Amie was the clearly better qualified candidate. Accordingly, Wever's averments as to EPISD's hiring policy and Amie's

qualifications are deficient, and the district court did not abuse its discretion in striking them.

Next, the Wever affidavit provides that she "was witness" to Amie's prior discrimination claims, and that, at that time, Ken Owen was EPISD's Athletics Director and therefore was aware that Amie had made a successful claim of discrimination against EPISD. Owen was one of the members on the Committee when Amie was applying for the Bowie head coach position in September 2005. However, EPISD provided competent evidence that Owen was not the Athletics Director from the time Amie instituted his prior discrimination claims through the time that those claims were settled in May 2003. In fact, Owen did not become Athletics Director until June 25, 2003. On appeal, Amie does not dispute that the Wever affidavit contains this factual error, and instead, proffers Wever's statements as evidence of Owen's participation in the prior discrimination proceedings, not his status as Athletics Director. We are not persuaded. This factual error negates Wever's competence to testify about Owen's knowledge of the prior discrimination claims. See FED. R. CIV. P. 56(e). In addition, the Wever affidavit provides no factual support for her personal knowledge of Owen's participation or awareness of the prior claims, other than her blanket assertion that she "was witness" to the prior discrimination claims. On these facts, we find that the district court did not abuse its discretion in striking the Wever affidavit.

We proceed to determine whether summary judgment was appropriate. We review a grant of summary judgment de novo. Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994). Summary judgment is proper when the evidence reflects no genuine issues of material fact and the non-movant is entitled to judgment as a matter of law. Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000) (citing FED. R. CIV. P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We view all evidence in the light most favorable to the party opposing the motion and draw all reasonable inferences in that party's favor. Id. at 255.

Amie argues that the district court viewed the evidence in the light most favorable to the movant, EPISD, and thus, erroneously concluded that Amie had not provided sufficient evidence of pretext for his race discrimination claim under Title VII.

To sustain his burden of proof, an employment discrimination plaintiff in a circumstantial evidence case must first establish his prima facie case of race-based employment discrimination by showing: (1) that he is a member of a protected class; (2) that he applied for an available position; (3) that he was qualified for that position when he applied; (4) that he was not selected; and (5) that after the rejection, either the employer selected someone else who was not a member of the protected class or the position remained open. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Davis v. Chevron USA, Inc., 14 F.3d 1082, 1087 (5th Cir. 1994).

Assuming the plaintiff establishes his prima facie case, the burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for the plaintiff's rejection. McDonnell Douglas, 411 U.S. at 802. A defendant must merely set forth, through admissible evidence, "reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (emphasis in original). The employer need only articulate a legitimate, nondiscriminatory reason for its actions, regardless of that reason's ultimate persuasiveness. Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 958 (5th Cir. 1993).

If the defendant is able to articulate such a reason, the plaintiff is then given an opportunity to demonstrate that the defendant's stated reason is a pretext for intentional discrimination. McDonnell Douglas, 411 U.S. at 804. This may be accomplished either directly, by showing that a discriminatory reason more than likely motivated the employer, or indirectly, by showing that the asserted reason is unworthy of credence. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

In this case, Amie has provided sufficient evidence to establish he, as an African America, is a member of a protected class, and that he was qualified for the head coach position, as all applicants were screened for minimum qualifications before being interviewed. Amie further established that he was not selected for the job, and that EPISD selected someone who is not a member of the protected class, as Morales is not African American. As such, we find that Amie has met his initial burden of establishing a prima facie case of discrimination. See Davis, 14 F.3d at 1087.

Pursuant to McDonnell Douglas and its progeny, the burden of production then shifts to EPISD to articulate a legitimate, nondiscriminatory reason for not selecting Amie for the head coaching position at Bowie. 411 U.S. at 802. EPISD's stated reason for not promoting Amie is that the selection process and criteria were job related and consistent with a business necessity. EPISD states that since Bowie was underperforming in reading and math skills, its focus was for student athletes to do well in the classroom and on the basketball court. The Committee, relying upon both classroom and basketball experience, determined Morales was the most impressive and qualified candidate.

Thus, we must now determine whether Amie has raised a genuine issue of material fact as to whether EPISD's proffered nondiscriminatory reason is pretext for discrimination. Amie points to evidence purportedly showing that he

was clearly better qualified than the selected candidate, Morales, for the head coach position.

A genuine issue of material fact exists when evidence shows the plaintiff was "clearly better qualified." Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 42 (5th Cir. 1996) (citing Bodenheimer, 5 F.3d at 959). "However, this evidence must be more than merely subjective and speculative." Id. (citations omitted). "[A] plaintiff must provide sufficiently specific reasons for his opinion" to establish a fact question as to relative qualifications. Id.

In his attempt to show that he was more qualified than Morales, Amie relies on deposition testimony of the Committee members in asserting that it was the policy of EPISD to hire the "best qualified" candidate to fill a vacancy. Amie argues that a comparison of their résumés clearly shows that the Committee violated their own hiring policy when they rejected him for the position, as he was better qualified, with nine years head coaching experience, than Morales, who had none.[3]

Amie's attempt to equate experience with superior qualifications is unpersuasive. Obviously, coaching experience is one component of defining who is more qualified for a head coach/teacher position, but it is not the sole component. See id., 81 F.3d at 42 (providing that "greater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another"). Furthermore, an independent review of their respective résumés does not clearly indicate that Amie is the better qualified candidate. Morales has both high school and college basketball coaching experience, whereas Amie has only coached at the middle and high school levels. Morales recently received his Masters Degree in Physical Education, whereas

---

[3] Amie also relies on the Weaver affidavit's statements regarding EPISD's hiring policy. As the district court did not abuse its discretion in striking the Wever affidavit, we will not consider it.

10

Amie only has a Bachelor of Science in Secondary Education. Additionally, although Amie has nine years of head coach experience, at the time of the interview for the head coach position, Amie had not had a coaching job in eight years. On the other hand, Morales had just been the assistant coach for Jefferson High School, helping them to reach the playoffs for the first time since 1997. Accordingly, Amie has failed to raise a genuine issue of material fact that EPISD's legitimate, nondiscriminatory reason for the job decision was pretext for unlawful discrimination.

We turn next to Amie's argument that he in fact presented sufficient evidence to support a prima facie case of retaliation under Title VII. See § 2000e-3(a) (prohibiting an employer from "discriminat[ing] against any of his employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter"). A plaintiff establishes a prima facie case of retaliation by showing: (1) that he engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision. See Shirley v. Chrysler First Inc., 970 F.2d 39, 42 (5th Cir. 1992) (citing Jones v. Flagship Int'l, 793 F.2d 714, 724 (5th Cir. 1986)). Once the prima facie case is established, the burden of producing some nondiscriminatory reason falls upon the defendant. See EEOC v. J.M. Huber Corp., 927 F.2d 1322, 1326 (5th Cir.1991) (citation omitted). The employee then assumes the burden of showing that the reasons given were a pretext for retaliation. Id.

The parties agree that Amie passes the first two prongs of the retaliation prima facie test, as he filed multiple EEOC complaints and the prior lawsuit against EPISD (activities protected by Title VII), and he was not selected for the Bowie job vacancy (an adverse employment action). See Shirley, 970 F.2d at 42.

The parties disagree, however, about the causal connection between Amie's rejection for the Bowie position and the protected activity.

A "causal link" is established when the evidence shows that "the employer's decision to terminate was based in part on knowledge of the employee's protected activity." Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 684 (5th Cir. 2001) (citing Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1122 (5th Cir. 1998)). The proffered evidence must be sufficient to permit a reasonable fact finder to conclude that the decision maker had actual knowledge of the protected activity. See Lippert v. Comm. Bank, 438 F.3d 1275, 1281–82 (11th Cir. 2006); see also Jones v. School Dist. of Phila., 198 F.3d 403, 415 (3d Cir. 1999) (affirming the district court's dismissal of a retaliation claim because plaintiff produced no evidence showing that either decision maker had any knowledge of plaintiff's previous EEOC filings).

The only evidence that Amie provided in his attempt to show the Committee knew of his prior protected activity was Wever's affidavit, which the district court appropriately struck. Thus, there is no evidence that any of the Committee members knew of Amie's prior protected conduct. Even Amie himself admitted in deposition testimony that he did not have any information that the Committee members were aware of his prior EEOC complaints, his prior lawsuit, or any other claims of discrimination.[4] In addition, the Committee

---

[4] The relevant excerpt from Amie's deposition testimony is as follows:

| [EPISD Counsel]: | [D]o you have reason to believe and evidence which would support an assertion that the committee members were aware of your EEOC charges of discrimination, lawsuit, or any other assertions by you that you had been previously discriminated against? |
|---|---|
| [AMIE]: | Okay. Let me get this question right. You're asking me, on that committee, did |

12

members all averred that they did not know of such matters. There being no proof of such knowledge, Amie fails to present a genuine issue of material fact regarding causation, a necessary element for his prima facie case of retaliation under Title VII. Accordingly, EPISD's motion for summary judgment was properly granted on this claim.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

-----

|  |  |
|---|---|
|  | anybody know about all of my complaints, or what was accused against me? |
| [EPISD Counsel]: | No, not what was accused against you, just what your assertions were against the school district related to discrimination. |
| [AMIE]: | No, they wouldn't. How would they know? We signed a bind that nobody would know about it. |
| [EPISD Counsel]: | Okay. And is that true with the Bowie High School Committee? |
| [AMIE]: | I would assume. If they knew, it didn't come from me. I couldn't tell you. I know they didn't know about our settlement. They couldn't have known about that. |